## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL KUHN,                     :        Civil  No. 1:11-CV-2017
                                  :
    Plaintiff,             :
                                  :
    v.                     :
                                  :        **(Magistrate Judge Carlson)**
CAPITOL PAVILION, et al.,         :
                                  :
    Defendants.            :

## MEMORANDUM OPINION

### I.  Statement of Facts and of the Case.

This is a civil rights action which was first brought by the Plaintiff, Michael
Kuhn, through the filing of a counseled complaint on October 31, 2011.  (Doc. 1.)
Kuhn's initial complaint alleged a violation of the Eighth Amendment to the United
States Constitution by the Defendants, in that Kuhn claimed that these Defendants had
been deliberately indifferent to his serious medical needs while he was incarcerated
at the Capitol Pavilion in November and December, 2009. (Id.)

While Kuhn was initially represented by counsel in this case, on June 29, 2012,
Kuhn's counsel moved to withdraw from this lawsuit.  (Doc. 21.)  Kuhn was given an
opportunity to respond to this motion, (Doc. 26.), but neglected to file any reasons.
Therefore, the motion of Kuhn's counsel to withdraw was granted on August 20, 2012.
(Doc. 29.)

Since the withdrawal of his counsel, there has been a disturbing lack of attention to this litigation by the Plaintiff, Mr. Kuhn. Thus, on August 27, 2012, Kuhn received a copy of the Court's Standing Practice Order. (Doc. 30.) That Standing Practice Order advised Kuhn in clear and precise terms of his obligations as a litigant to respond to defense motions, stating in part that:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the [] time frame [set by the court or local rules], Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 30, p.2.)

This Standing Practice Order also placed an affirmative obligation on Kuhn to respond to summary judgment motions filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, stating that:

> **B. Summary Judgment Motion Under Fed. R. Civ. P. 56.**
> One type of pre-trial motion is a motion for summary judgment under Fed. R. Civ. P. 56. The motion may be made by any party, with or without supporting affidavits. Under Rule 56(e) the affidavits may be supplemented or opposed by depositions, answers to interrogatories or further affidavits. The affidavits may also be supplemented by admissions on file and other appropriate evidentiary material.
>
> Rule 56(e) also provides that a party opposing a summary judgment motion may not rely on the mere allegations or denials in his or her pleading, such as a complaint. Instead, Rule 56(e) requires a party opposing a motion for summary judgment to file evidentiary material

(affidavits or other evidence), as described in Rule 56, setting forth specific facts showing there is a genuine issue for trial.

Local Rule 56.1 requires a motion for summary judgment to be accompanied by a separate document containing a short and concise statement of material facts in numbered paragraphs. Local Rule 56.1 also requires a party opposing a summary judgment motion to file a separate concise statement of material facts responding to the numbered paragraphs of the moving party's statement. The local rule further requires that the statements of material fact by both parties must include a reference to that part of the record that supports each statement.

All parties to a summary judgment motion, either moving for it or opposing it, must comply with the filing requirements of Local Rules 7.1 through 7.8, described above. If a party opposing a summary judgment motion does not support such opposition as required by Rule 56, the motion for summary judgment shall be considered solely upon the affidavits or other supporting evidentiary material filed by the moving party, if any, and the motion may be granted.

(<u>Id</u>., pp.3-4.)

On August 30, 2012, this case was reassigned to the undersigned for further proceedings. (Doc. 31.) We then imposed several other basic obligations upon Kuhn on September 11, 2011, advising him as follows:

We are presently unable to communicate with Kuhn because we do not have valid mail, e-mail or telephone contact information for the Plaintiff, who is proceeding *pro se.* As a *pro se* litigant Kuhn's failure to maintain a contact information where he could be reached itself violates the rules of this Court; specifically, Local Rule 83.18, which provides that:

**LR 83.18 Appearance of Parties Not Represented by Counsel.**
Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of

pleadings, motions or papers in the action may be served upon such party.

Accordingly, IT IS ORDERED as follows:

1. On or before **September 25, 2012**, Kuhn shall provide the Court with contact information in the form of current mail, e-mail or telephone contact information. Kuhn is advised that the failure to provide this information may result in the Plaintiff being deemed to have abandoned this case, and may lead to the entry of an order dismissing this action without any further notice to the Plaintiff.

(Doc. 32.) Mr. Kuhn did not comply with this order and the time for compliance has now passed without any action on his part.

On September 27, 2012, the Defendants moved for summary judgment in their favor on all of Kuhn's claims against them. (Docs. 33, 34, 35.) We then entered an order which stated as follows:

The Plaintiff is ORDERED to file a response to the summary judgment motion in accordance with Local Rule 7.6 on or before **October 18, 2012**. The Plaintiff is also advised that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiff to respond to motions and provides that:

Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation,

shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). Therefore, failure to comply with this briefing schedule may result in dismissal of this action.

(Doc. 37.) Kuhn has not complied with this order and the deadline for compliance has now lapsed. Since the response deadline prescribed by the court has now passed without any action on the Plaintiff's part to respond to the motion, this motion is now deemed ripe for resolution.

With respect to this motion, and Mr. Kuhn's claims that officials at the Capitol Pavilion were deliberately indifferent to his medical needs in the Fall of 2009 when he was housed at this facility, the undisputed and uncontested facts are as follows: When he first arrived at the institution in 2009, Mr. Kuhn admitted that he received a health care orientation form. That health care orientation form detailed how Capitol Pavilion residents are to seek and obtain medical treatment, and was signed by Mr. Kuhn. Mr. Kuhn also admitted to receiving the Capitol Pavilion orientation checklist which stated that "all residents must turn in any medications including over the counter meds to the shift supervisor."

According to Mr. Kuhn, upon intake to Capitol Pavilion in November 2009, he met with a staff person who took his medical history. This medical history stated that Mr. Kuhn's medications were on file at the facility and Mr. Kuhn has acknowledged receiving medical on-going care and treatment while housed at the Capitol Pavilion. The uncontested evidence shows that there were many facets to this care. For example, Mr. Kuhn stated that he went to Hamilton Health on November 11, 2009, and November 27, 2009, for treatment related to his diabetes. Further, Mr. Kuhn recalled that, on four occasions, he visited Commonwealth Clinical in order to pick up medications he needed, including insulin. Mr. Kuhn also acknowledged that while at Capitol Pavilion, he regularly received medications from facility staff. Further, when shown the Capitol Pavilion medical log of times when he was provided diabetic medication or had diabetic testing completed, Mr. Kuhn admitted that he had initialed each entry acknowledging his receipt of these health care services. These records then revealed that to monitor and control his diabetes, Mr. Kuhn was provided twice daily finger stick tests and two types of insulin. Indeed, Mr. Kuhn has admitted that while at Capitol Pavilion, he was provided insulin in both shot and pill form, and conceded that while at Capitol Pavilion he was performing finger stick tests several times a day to monitor his blood glucose levels. In addition to this on-going care and treatment, Mr. Kuhn has acknowledged received additional medications while at Capitol Pavilion. The Medication Inventory at this facility, in turn, reveals that Mr. Kuhn was

provided 14 different non-diabetic medications by staff, and confirms that he was provided these medications daily.

Facility staff also assisted Mr. Kuhn in making dietary and life-style choices designed to improved his health during his incarceration at this facility. In fact, Mr. Kuhn has favorably commented on this aspect of his prison health care, stating that: "They actually set me up with a dietician and made sure that I got proper nutrition. They set me up with what they call a diabet - - what's it called, a dietician to make sure that my menu was proper. Once I got on that diet, I started getting a lot better."

The undisputed evidence also rebutted Mr. Kuhn's claim that he suffered a stroke in December 2009, due to the deliberate indifference of the Defendants. Instead, this uncontested evidence shows that on December 1, 2009, Mr. Kuhn was admitted to the Harrisburg Hospital emergency department for "evaluation of a headache." A neurology consultation was performed by Charles S. Yanofsky, M.D., who concluded that Mr. Kuhn had suffered "some alteration of consciousness, which may have been only sleepiness." The Harrisburg Hospital Summary Report, notes as the discharge diagnosis: right-sided weakness secondary to old cerebrovascular accident; chronic cervicogenic headache; diabetes mellitus; dyslipidemia; coronary artery disease; depression and posttraumatic stress disorder. However, despite the extensive testing completed while Mr. Kuhn was hospitalized there was no diagnosis that Mr. Kuhn had ever suffered a stroke.

On these undisputed facts, and given Kuhn's plain abandonment of this lawsuit, for the reasons set forth below, the summary judgment motion will be granted.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the Plaintiff should be deemed to concur in these motions, since Kuhn has failed to timely oppose the motion, or otherwise litigate this case. These procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Kuhn has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. On these facts, the Plaintiff's procedural defaults compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one

party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiff has failed comply with this Court's orders, and has neglected to comply with Local Rule 7.6 by filing a timely response to a motion to dismiss filed by the Defendants. These cumulative failures now compel us to apply the sanction called for under the Local Rules and deem the Plaintiff to not oppose these motions.

**B.** **Dismissal of this Case Is Also Warranted Under Rule 41**

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad, is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of

the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See,

e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has neglected to litigate this case.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's

ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g.</u>, <u>Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); <u>Ware,</u> 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

<u>Briscoe v. Klaus</u>, 538 F.3d at 259-60.

In this case, the Plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, dismissal of the case clearly rests in the discretion of the trial judge.  <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, since his counsel withdrew, the Plaintiff has failed to timely file pleadings, and has not complied with orders of the Court. Thus, Kuhn's conduct amply displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff. In this setting we must assess whether this inaction reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). Here, we find that the Plaintiff's actions were willful, and reflect a pattern of willfulness. At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing him to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the Plaintiff's actions are not

accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular Plaintiff's claims, since Kuhn is now wholly non-compliant with his obligations as a litigant. The Plaintiff cannot refuse to cooperate

with this litigation, which would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss. In any event, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this motion. More fundamentally, as discussed below, Kuhn's claims against these Defendants fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C.   Kuhn's Claims Fail On Their Merits

The Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31,

2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id.

at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the Defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that she is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D.

-19-

Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Therefore, Kuhn's failure to comply with Local Rule 56.1 compels us to treat the failure to file a counter-statement as an admission of all the facts set forth in the movant's statement.

Judged against these standards, Kuhn's claims against these Defendants in this action clearly fail. In this case, the gravamen of Kuhn's complaint is that the Defendants violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. The Plaintiff faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Kuhn must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Kuhn is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"Although this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment, we also have recognized: 'Estelle makes clear that if "unnecessary and wanton infliction of pain," ... results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' Id. at 347." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). Thus, in order to establish a serious medical need the "plaintiff must make an '*objective*' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a '*subjective'* showing that defendant acted with "a sufficiently culpable state of mind.' See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)." Montgomery v. Pinchak,

294 F.3d 492, 499 (3d Cir. 2002). Applying these benchmarks courts have frequently rebuffed efforts by inmates to define minor concerns as grave medical conditions, whose treatment raises matters of constitutional dimension. See e.g., Tsakonas v. Cicchi. 308 F. App'x 628 (3d Cir. 2009)(rejecting Eighth Amendment claim by inmate based upon athletes foot); Caldwell v. Fogel, No. 08-728, 2009 WL 3048558 (W.D.Pa. Sept. 21, 2009)(same).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations

omitted).  Furthermore, in a prison medical context, deliberate indifference is generally

not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct.

13, 2000)("courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care").  Thus, such complaints fail as

constitutional claims under § 1983 since "the exercise by a doctor of his professional

judgment is never deliberate indifference. See e.g. Brown v. Borough of

Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises

professional judgment his behavior will not violate a prisoner's constitutional

rights.')".  Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this

exacting standard, courts have frequently rejected Eighth Amendment claims that are

based upon the level of professional care that an inmate received; see, e.g., Ham v.

Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x

195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v.

White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v.

Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that

significant medical services were provided to the inmate but the prisoner is dissatisfied

with the outcome of these services.  Instead, courts have defined the precise burden

which an inmate must sustain in order to advance an Eighth Amendment claim against

a healthcare professional premised on allegedly inadequate care, stating that:

The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to

schedule a doctor's appointment); <u>Abdul-Wadood v. Nathan</u>, 91 F.3d 1023, 1024-35

(7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for

sickle cell anemia falls well short of demonstrating deliberate indifference); <u>Sherrer</u>

<u>v. Stephen</u>, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint

instead of fusion surgery is merely a disagreement with the course of medical

treatment and does not state a constitutional claim"). Indeed, courts have repeatedly

held that when an inmate's Eighth Amendment claim entails nothing more than a

disagreement concerning which type of treatment to prescribe for a particular ailment,

prison officials are entitled to a judgment in their favor as a matter of law. <u>See e.g.</u>,

<u>Gause v. Diguglielmo</u>, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of

medication does not rise to the level of an Eighth Amendment violation); <u>Innis v.</u>

<u>Wilson</u>, 334 F. App'x 454 (3d Cir. 2009)(same); <u>Whooten v. Bussanich</u>, 248 F. App'x

324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F. App'x 390 (3d Cir. 2007)(same).

Therefore, where a dispute in essence entails no more than a disagreement between an

inmate and doctors over alternate treatment plans, the inmate's complaint will fail as

constitutional claims under § 1983 since "the exercise by a doctor of his professional

judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836

(E.D. Pa. 1997)(citations omitted).

Judged against these legal benchmarks, Kuhn fails to state a claim upon which

relief can be granted, since the undisputed, and uncontested, facts reveal that Kuhn

received daily medical care and attention for his existing medical conditions while housed at the Capitol Pavilion. This care came in many forms and included, daily testing and medication; outside medical care, treatment, and examination; dietary and lifestyle counseling and education; along with emergency treatment as needed. The nature, extent and depth of that care is entirely undisputed, and completely rebuts any claim of deliberate indifference to Kuhn's medical needs, rendering those claims entirely frivolous and without merit.

Thus, an analysis this final <u>Poulis</u> factor–the meritoriousness of the plaintiff's claims–reveals that the Plaintiff's assertions against the remaining Defendants in this complaint fail to allege a colorable claim under the Constitution. Given the legal bankruptcy of these claims, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

Having concluded that Kuhn's claims are flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Kuhn fails to state a viable civil rights cause of action, the factual and legal grounds

proffered in support of this complaint make it clear that he has no right to relief, and the Plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore the complaint will be dismissed as to all defendants without further leave to amend.

**III.   <u>Order</u>**

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED, the Plaintiff's complaint is DISMISSED, and the Clerk is directed to close this file.

So ordered this 19th day of October, 2012.




***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge